IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 19, 2025

**STATE OF TENNESSEE v. JEROME COLE, JR.**

**Appeal from the Criminal Court for Knox County**
No. 128041   Steven Wayne Sword, Judge

_____

**No. E2024-01456-CCA-R3-CD**

_____

The Defendant, Jerome Cole, Jr., pled guilty in the Knox County Criminal Court to possession of a firearm after having been convicted of a violent felony and aggravated assault with a deadly weapon. Pursuant to the plea agreement, he received concurrent eight-year sentences with the trial court to determine the manner of service. After a sentencing hearing, the trial court ordered that he serve the sentences in confinement. On appeal, the Defendant claims that the trial court erred by denying his request for alternative sentencing. Based on our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN W. CAMPBELL, SR., J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and MATTHEW J. WILSON, JJ., joined.

Jonathan Harwell (on appeal) and Heather Bosau (at trial), Assistant Public Defenders, Knoxville, Tennessee, for the appellant, Jerome Cole, Jr.

Jonathan Skrmetti, Attorney General and Reporter; Richard D. Douglas, Senior Assistant Attorney General; Charme P. Allen, District Attorney General; and Joe Welker, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

On June 28, 2024, the Defendant was charged by information with possession of a firearm after having been convicted of a violent felony, a Class B felony, and aggravated assault with a deadly weapon, a Class C felony. That same day, he pled guilty to both charges.

At the guilty plea hearing, the State summarized the facts underlying the convictions as follows: On the afternoon of August 18, 2023, police officers responded to a report of someone yelling and throwing items at a female at an apartment complex on Dutch Valley Road. When the officers arrived, they saw the Defendant standing outside the driver's side of the vehicle and the female victim standing outside the passenger's side of the vehicle. The officers interviewed the Defendant and the victim separately. The Defendant and the victim both said that they were having problems with the vehicle and that they did not have a physical altercation. However, the officers noticed a red bump and a laceration above the victim's forehead. A witness discreetly signaled to the officers that she wanted to speak with them. The witness told the officers that the Defendant hit the victim multiple times and that the officers needed to look at the victim's blue tank top because it was covered with blood. The officers returned to the victim, who was reluctant to speak with them, and looked at the blue tank top that the victim was wearing underneath her black overshirt. The tank top was covered with blood. The victim began crying hysterically and told the officers, "'I can't. I don't want him to go to jail. I don't have anywhere else to go. I promised I won't say anything[.]'" The victim begged the officers not to take the Defendant to jail if she told them what really happened, but they placed him under arrest without incident. The victim told the officers that she and the Defendant were sitting in the vehicle, that the vehicle began having mechanical problems, and that she and the Defendant got into a dispute because she turned off the vehicle. The victim stated that the Defendant became irate and hit her face multiple times; that he told her to get out of the vehicle; and that he proceeded to hit her face and head, which caused the bleeding on her forehead. The victim said the Defendant told her to put on her black overshirt to cover the bloody tank top and told her to pretend nothing happened or he would shoot her with a handgun that was in his possession. The victim told the officers that the Defendant had held the gun to her head on prior occasions and that she could not keep track of how many times he had assaulted her in the past. During an inventory search of the Defendant's vehicle, the officers found a handgun containing a fully-loaded magazine and one round in the chamber. The Defendant had a prior conviction for a violent felony.

Pursuant to the negotiated plea agreement, the Defendant received an eight-year sentence as a Range I, standard offender for the conviction of possession of a firearm after having been convicted of a violent felony and received a concurrent eight-year sentence as a Range II, multiple offender for the conviction of aggravated assault with a deadly weapon. The Defendant was to serve the sentences at one hundred percent, and the trial court was to determine the manner of service of the sentences.

The trial court held a sentencing hearing on August 29, 2024. No witnesses testified, but the State introduced the Defendant's presentence report into evidence. According to the report, the then forty-three-year-old Defendant graduated from high school in 1999 and received a certificate in the Tennessee Department of Correction's Career Management for

Success Program in 2015. The Defendant stated in the report that he obtained a bachelor's degree in healthcare management from Illinois University in 2022. He described his mental and physical health as good but said he suffered a traumatic brain injury at three years old. The Defendant stated that he "rarely" consumed alcohol or smoked marijuana and that he had never received treatment for substance abuse. The Defendant said that he had never been married but that he had five children from three previous relationships. Regarding employment, the Defendant reported that he worked for Jani-King for three months in 2004, Dillard's for eight months in 2004, and Labor Ready since 2007. The Defendant reported that he also received monthly disability benefits.

The report showed the following criminal history for the Defendant: a 2014 felony conviction of possession of firearm after having been convicted of a felony drug offense, a 2014 felony conviction of aggravated assault, a 2013 misdemeanor conviction of driving without a valid license, a 2011 misdemeanor conviction of harassment, a 2011 misdemeanor conviction of assault, a 2008 felony conviction of possession of Schedule VI drugs, and four misdemeanor convictions of casual exchange from 2000 to 2006. The Defendant's criminal history reflected that he was ordered to serve several of his sentences on probation. The Defendant's Strong-R assessment classified his overall risk to reoffend as moderate with moderate needs in residential and aggression and low needs in mental health, family, attitudes and behaviors, employment, alcohol and drug use, education, and friends.

The Defendant gave an allocution in which he asked the trial court to consider that he successfully completed probation in the past. He stated that he needed to obtain employment but that his court dates "keep[] [him] running around." He said that some of his "loved ones" were in the courtroom to support him and that he had stayed out of trouble for one year since assaulting the victim. Before this case, he stayed out of trouble for seven or eight years. The Defendant said he could complete probation and requested that the trial court place him on probation.

The defense introduced a report on recidivism prepared by the Bureau of Justice Statistics into evidence. During closing arguments, defense counsel advised the trial court that according to the report, defendants incarcerated for property crimes were more likely to recidivate within one year of release than defendants convicted of drug crimes and violent offenses. Defense counsel requested that the trial court sentence the Defendant to probation or split confinement. The trial court took a break to review the report.

When the hearing resumed, the trial court stated that it had reviewed the recidivism report and the presentence report and that it had taken into consideration the arguments of counsel, the Defendant's allocution, the principles of sentencing, and the nature and characteristics of the offenses. The trial court stated that there were three sentencing

options for the Defendant: full probation, split confinement, or confinement. The trial court first addressed the three sentencing considerations in Tennessee Code Annotated section 40-35-103(1) and found that two of them supported confinement: (A) confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct and (C) measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant. *See* Tenn. Code Ann. § 40-35-103(1)(A), (C). The trial court then said that it was particularly concerned this was the Defendant's second conviction of being a felon in possession of a firearm and that "that tells me that [the Defendant's] not paying any attention at all to the law. . . . And so, to me, we have tried to rehabilitate [the Defendant] and it's been unsuccessful."

Continuing to address the Defendant's potential for rehabilitation, the trial court turned to the Defendant's allocution and stated that the Defendant "didn't express any remorse at all, really, for -- for the victim. He's just talking about himself. . . . He's just worried about himself, doesn't care about his behavior or his victims." The trial court noted that the Defendant's Strong-R assessment classified him as a moderate risk to reoffend and concluded that he was not a suitable candidate for probation. Regarding split confinement, the trial court stated that split confinement was not "a just sentence in accordance with the seriousness of the offenses." Accordingly, the trial court denied the Defendant's request for alternative sentencing and ordered that he serve the sentences in the Department of Correction.

## ANALYSIS

The Defendant takes issue with the trial court's comments regarding the sentencing considerations in Tennessee Code Annotated section 40-35-103(1) and the trial court's comments about his lack of remorse in his allocution. The State argues that the Defendant has not shown that the trial court abused its discretion in ordering that he serve his sentences in confinement. We agree with the State.

This court reviews the length, range, and manner of service of a sentence imposed by the trial court under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012); *see State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012) (applying the *Bise* standard to alternative sentencing). In determining the defendant's sentence, the trial court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the defendant in his own behalf; and (8) the

result of the validated risk and needs assessment conducted by the department and contained in the presentence report. *See* Tenn. Code Ann. § 40-35-210(b); *see also Bise*, 380 S.W.3d at 697-98. The trial court also must consider the potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. § 40-35-103(5). The burden is on the Defendant to demonstrate the impropriety of his sentence. *See* Tenn. Code Ann. § 40-35-401, Sent'g Comm'n Cmts.

The purpose of the Sentencing Reform Act is "to promote justice" and ensure that "[e]very defendant shall be punished by the imposition of a sentence justly deserved in relation to the seriousness of the offense[.]" Tenn. Code Ann. § 40-35-102(1). The sentence imposed "should be no greater than that deserved for the offense committed[]" and "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed[.]" Tenn. Code Ann. § 40-35-103(2), (4).

Regarding alternative sentencing for a felony, a defendant is eligible for alternative sentencing if the sentence actually imposed is ten years or less. *See* Tenn. Code Ann. § 40-35-303(a). Moreover, a defendant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony should be considered a favorable candidate for alternative sentencing absent evidence to the contrary. *See* Tenn. Code Ann. § 40-35-102(6). In determining if incarceration is appropriate in a given case, a trial court should consider whether:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1). A defendant with a long history of criminal conduct and "evincing failure of past efforts at rehabilitation" is presumed unsuitable for alternative sentencing. Tenn. Code Ann. § 40-35-102(5).

Initially, we note that because the Defendant was sentenced for a Class B felony for his conviction of possession of a firearm after having been convicted of a violent felony and was sentenced as a multiple offender for his conviction of aggravated assault, he is not considered to be a favorable candidate for alternative sentencing for either conviction. As to the statements made by the trial court regarding the sentencing considerations in

Tennessee Code Annotated section 40-35-103(1), the Defendant first takes issue with consideration (C), whether measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.[1]  In addressing this consideration, the trial court stated:

> Have measures less restrictive frequently or recently been tried unsuccessfully?  I would say frequently.  And I would not [sic] classify it as unsuccessfully -- that's why I pointed out, you know, you can look at all the recidivism studies you want to, but when you look at the individual, [the Defendant] has had multiple opportunities to go through the system.  And just because you complete probation successfully, if you go on to commit other crimes after your probation's off, you weren't rehabilitated.

The Defendant contends that the trial court misunderstood consideration (C) because the trial court focused on his continuing to commit crimes *after* he completed probation rather than focusing on the fact that he successfully completed probation.  The Defendant claims that a sentencing court should use this consideration to deny probation only when defendants have demonstrated a recent or frequent inability to complete probationary terms.  However, this court has repeatedly upheld a trial court's reliance on this consideration to deny alternative sentencing when probation sentences fail to deter a defendant from committing additional crimes.  *See State v. Austin*, No. E2024-00307-CCA-R3-CD, 2024 WL 5233137, at *5 (Tenn. Crim. App. Dec. 27, 2024), *no perm. app. filed*; *State v. Vanwinkle*, No. M2017-00812-CCA-R3-CD, 2018 WL 2383613, at *6 (Tenn. Crim. App. May 25, 2018), *no perm. app. filed*; *State v. Applegate*, No. E2015-00809-CCA-R3-CD, 2016 WL 3356275, at *5 (Tenn. Crim. App. June 10, 2016), *perm. app. denied* (Tenn. Oct. 20, 2016); *State v. Trivette*, No. E2006-00129-CCA-R3-CD, 2007 WL 1687168, at *5 (Tenn. Crim. App. June 12, 2007), *no perm. app. filed*; *State v. Inscore*, No. E2002-01005-CCA-R3-CD, 2002 WL 31833116, at *4 (Tenn. Crim. App. Dec. 18, 2002), *no perm. app. filed*.  Therefore, the trial court did not abuse its discretion in concluding that this consideration supported confinement.

Next, the Defendant takes issue with statements made by the trial court regarding Tennessee Code Annotated section 40-35-103(1)(B), whether confinement is necessary to avoid depreciating the seriousness of the offenses.  In addressing consideration (B), the trial court stated that the circumstances of the Defendant's offenses were "bad" but that the court did not think they were "any worse" than any other aggravated assault or unlawful possession of a firearm.  Later, the trial court stated,

---

[1] We will address the issues raised by the Defendant in the order they are raised in his appellate brief.

I know the Strong R Assessment came back and said he's a moderate risk, but this is at least his third violent crime, the second violent felony. . . . I do not believe that you're a suitable candidate for probation. *I don't believe that split confinement will be sufficient to be a just sentence in accordance with the seriousness of the offenses that you have committed.* And so, for that -- those reasons, I believe that a sentence in the penitentiary is appropriate.

(Emphasis added.) The Defendant contends that the trial court's statements about the seriousness of the offenses were contradictory and that if the trial court thought the circumstances of the offenses did not support confinement under consideration (B), then the trial court could not use the circumstances of the offenses to justify denying split confinement.

Our supreme court has held that in order to deny alternative sentencing based on the circumstances of the offense, the circumstances "must be especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree, and the nature of the offense must outweigh all factors favoring probation." *State v. Fields*, 40 S.W.3d 435, 441 (Tenn. 2001) (citations and internal quotations omitted). We agree with the Defendant that, given the trial court's finding that the circumstances of the offenses were not of an excessive or exaggerated degree, the trial court could not use the seriousness of the offenses as a basis for alternative sentencing, including split confinement, which is a form of alternative sentencing. However, the trial court's decision to deny any form of alternative sentencing was based on additional findings, not just the circumstances of the offenses. Therefore, he is not entitled to relief on this issue. *See* Tenn. R. App. P. 36(a).

The Defendant claims that the trial court misapplied Tennessee Code Annotated section 40-35-103(1)(A), that confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct, because the trial court found that the Defendant had a long history of criminal conduct but did not make a finding that confinement is necessary to protect society. We disagree with the Defendant. In addressing consideration (A), the trial court stated as follows:

When the Court looks at the Principles of Sentencing, generally what you're dealing with, under 40-35-103, for whether or not somebody has to go to the penitentiary, is you're looking, is confinement necessary to protect society by restraining a defendant with a long history? And I would classify [the Defendant's] history as long. . . .

When I look at these, I look at how serious they are, as well, too. That factors in my mind when you look at somebody with a lengthy sentence. You

know, somebody can have 50 worthless checks offenses and, well, that's - - that's a long history but it's not that serious.

And so, the more serious it gets, the more impactful to me that becomes on whether you're classifying this as a long history. And because he's got a lot of serious stuff, I do consider this long. So, I think that weighs in favor of confinement.

Although the trial court did not specifically state that "confinement is necessary to protect society," the trial court's extensive comments about the seriousness of the Defendant's criminal history demonstrates that the trial court found that both parts of consideration (A) were applicable.

Finally, the Defendant claims that the trial court "faulted" him for his allocution by finding that he did not express remorse for harming the victim. The Defendant asserts that his failure to provide "an eloquent or particularly moving allocution" was not a statutory justification for the denial of an alternative sentence. Again, we disagree with the Defendant. Lack of remorse is a factor that weighs against a defendant's potential for rehabilitation or treatment and, therefore, supports a denial of alternative sentencing. *State v. Jones*, No. E2004-01300-CCA-R3-CD, 2005 WL 1219979, at *6 (Tenn. Crim. App. May 24, 2005). The Defendant did not express any remorse for the crimes during his allocution. Therefore, the trial court did not abuse its discretion by considering his lack of remorse as a basis for denying alternative sentencing.

Here, the trial court considered the purposes and principles of sentencing and articulated its reasons for denying alternative sentencing on the record. The trial court found that confinement was necessary to protect society by restraining a defendant who has a long history of criminal conduct and that measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the Defendant. The trial court also denied alternative sentencing based on the Defendant's lack of potential for rehabilitation or treatment and his lack of remorse. The record supports those findings, and they are sufficient to support the trial court's denial of probation and split confinement. Therefore, we conclude that the trial court did not abuse its discretion in ordering that the Defendant serve his sentences in the Department of Correction.

## CONCLUSION

Upon our review, we affirm the judgments of the trial court.

s/ John W. Campbell
JOHN W. CAMPBELL, SR., JUDGE

- 8 -